Dana J. Oliver, Esq. (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone: (855)384-3262
Facsimile: (888)570-2021

*Attorney for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

CHET MICHAEL WILSON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MORTGAGE ONE, INC.

Defendant.

Case No. 3:25-cv-03648-CAB-DDL

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Chet Michael Wilson by his undersigned counsel, for this class action complaint against Defendant Mortgage One, Inc. ("Defendant"), allege as follows:

## I. INTRODUCTION

1. Nature of Action: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to

their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, including his own.

4. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from Defendant.

## II. PARTIES

5. Plaintiff is an individual.

6. Defendant is a corporation with its principal place of business located Carlsbad, San Diego County, California, which is located within this District.

## III. JURISDICTION AND VENUE

7. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

8. Personal Jurisdiction: This Court has personal jurisdiction over Defendant because they are located in this District.

9. Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the illegal telemarketing at issue—occurred from this District.

10. Intradistrict Assignment: Assignment to this Division is proper pursuant to Civil Local Rule 3-2(c) because a substantial part of the events or omissions that give rise to Plaintiff's claims—namely, the direction of the illegal telemarketing—occurred from this District and Defendant resides here.

## IV. FACTS

### A. The Enactment of the TCPA and its Regulations

11. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

12. § 227(c) of the TCPA requires the FCC to “initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers’ privacy rights to avoid receiving telephone solicitations to which they object.” 47 U.S.C. § 227(c)(1).

13. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14. A listing on the Registry “must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.” *Id*.

15. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or “on whose behalf” such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B. Defendant’s Unsolicited Telemarketing to Plaintiff**

16. Plaintiff is, and at all times mentioned herein was, a “person” as defined by 47 U.S.C. § 153(39).

17. Plaintiff is, and has been for at least five years, the subscriber to and customary user of his cellular telephone number—(541) XXX-9999.

18. Plaintiff had registered his number on the National Do Not Call Registry for at least 30 days prior to receiving the calls at issue.

19. Plaintiff uses, and at all times for at least five years, used telephone number (541) XXX-9999 as his personal residential telephone number.

20. Plaintiff does not use, and at no time has he used this number for business or commercial purposes.

21. Plaintiff uses this number for personal and household purposes.

22. Plaintiff does not have a landline telephone number in his home.

23. Plaintiff uses his cellular phone number for personal use only as one would use a landline telephone number in a home.

24. Plaintiff uses his cellular phone number primarily to communicate with friends and family, to schedule personal appointments, and for other household purposes.

25. Plaintiff is not reimbursed by a business for his cell phone plan.

26. Plaintiff had registered his number on the National Do Not Call Registry for at least 30 days prior to receiving the calls at issue.

27. Defendant placed calls to telephone number (541) XXX-9999 intending to reach someone other than Plaintiff.

28. Plaintiff never consented to receive calls from Defendant.

29. Plaintiff never did business with Defendant.

30. Despite that, Plaintiff received multiple telemarketing calls and text messages from the Defendant in October 2025.

31. Defendant called Plaintiff on at least four occasions from telephone number (541) 348-8064.

32. Plaintiff rejected the first three calls on October 7, October 8, and October 16, 2025.

33. On October 16, Plaintiff answered the call which was to make a sales pitch similar to what was advertised in the texts below.

34. Plaintiff tried calling the telephone number back but could not get through to a live person.

35. Defendant also sent Plaintiff at least five text messages from the same telephone number.

36. Plaintiff received two text messages on October 7, and one each on October 8, October 10, and October 13, 2025.

37. The text entries are provided below:






38. The text messages were sent to advertise the Defendant's lending services.

39. The text messages referenced Mortgage One by name and identified the sender as a representative of Mortgage One.

40. The text messages referenced mortgage lending services and encouraged the recipient to obtain additional information regarding refinancing or home loan products.

41. The text messages included language promoting Mortgage One's services, including references to loan programs, interest rates, prequalification, or application opportunities.

42. The text messages invited the recipient to respond, call back, click a link, or otherwise engage to obtain Mortgage One's lending services.

43. The text messages were designed to generate leads and encourage the purchase of Defendant's services.

44. Each of the calls and text messages was initiated for the purpose of encouraging the purchase of Defendant's mortgage lending services.

45. Defendant's business consists of offering residential mortgage loans and related financial products for profit.

46. The calls and text messages were made as part of Defendant's telemarketing efforts to generate customers for its lending services.

47. The communications were unsolicited marketing outreach designed to secure new customers.

48. The foregoing calls and text messages constituted "telephone solicitations" within the meaning of 47 C.F.R. § 64.1200(f)(15) because they were initiated for the purpose of encouraging the purchase of Defendant's mortgage lending services.

49. Although the messages referenced an individual named "William," Plaintiff never requested information from Mortgage One and had no relationship with Defendant.

50. The messages were not sent in response to any inquiry submitted by Plaintiff.

51. Even if Defendant believed it was contacting another person, the purpose of the messages was to encourage the purchase of Defendant's lending services.

52. The commercial purpose of a communication is determined by its objective content, not by whether the recipient was the intended individual.

53. The text messages were not purely informational; they promoted Mortgage One's lending services and sought to generate business.

54. The calls and text messages originated from telephone number (541) 348-8064.

55. That telephone number is owned by Defendant Mortgage One, Inc.

56. When Plaintiff returned the call to (541) 348-8064, the line connected to a system identifying itself as Mortgage One or referencing Mortgage One's lending services.

57. The originating number was not a spoofed or masked number but was used consistently for Defendant's outbound communications.

58. During the October 16, 2025 call, the caller identified himself as "with Mortgage One" and referenced Mortgage One's lending services.

59. The text messages identified the sender as being associated with Mortgage One.

60. The text messages referenced Mortgage One by name and promoted Mortgage One's mortgage lending products.

61. The communications did not reference any third-party marketing company.

62. No entity other than Mortgage One was identified in the communications.

63. The text messages included a hyperlink directing the recipient to a website associated with Mortgage One.

64. The link resolved to a webpage branded with Mortgage One's name, logo, and mortgage lending services.

65. The website requested personal information for purposes of applying for or inquiring about Mortgage One's loan products.

66. The communications provided contact information associated with Mortgage One.

67. Defendant is a sophisticated commercial entity engaged in the business of marketing residential mortgage lending services nationwide.

68. As a lender engaged in outbound marketing, Defendant is required to comply with federal telemarketing laws, including the TCPA and its implementing regulations.

69. Mortgage lenders, including the Defendant, are routinely advised of their obligations under the TCPA, including the prohibition against initiating more than one telephone solicitation within a 12-month period to a number registered on the DNC Registry.

70. Defendant either failed to check the National Do Not Call Registry before initiating the communications or ignored the results of such checks.

71. Defendant failed to implement reasonable procedures to prevent telephone solicitations to numbers on the National Do Not Call Registry.

72. Defendant, as a commercial lender, is required by federal regulations to maintain written policies and procedures to comply with the national do-not-call requirements.

73. Defendant's conduct reflects at minimum a reckless disregard for compliance with federal telemarketing laws.

74. The telemarketing alleged herein: (A) invaded Plaintiff's privacy and solitude; (B) wasted Plaintiff's time; (C) annoyed Plaintiff; (D) tied up Plaintiff's phone line; and (E) harassed Plaintiff.

## V. CLASS ACTION ALLEGATIONS

75. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

76. Plaintiff brings this action on behalf of herself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23:

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant promoting Defendant's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

77. Excluded from the class are Defendant, Defendant's officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

78. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records.

79. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendant's telemarketing calls and Class members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

80. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Class, and Defendant has no defenses unique to Plaintiff.

81. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

a. whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

b. whether Defendant made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls and;

c. whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

82. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members, such that joinder of all members is impracticable.

83. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive

of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c. Defendant has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Class as a whole; and

d. Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the National DNC Class)**

84. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

85. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

86. Defendant violated the TCPA by sending multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry

87. These violations were willful or knowing.

88. As a result of Defendant's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

89. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the National DNC Class, respectfully requests that the Court enter judgment against Defendant for:

A. Certification of the Class as alleged herein;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned as counsel for the Class;

D. Damages to Plaintiff and members of the Class pursuant to 47 U.S.C. § 227(c)(5);

E. Attorneys' fees and costs, as permitted by law; and

F. Such other or further relief as the Court deems just and proper.

**PLAINTIFF**, individually and on behalf of all others similarly situated,

DATED this 22nd day of February, 2026.

By: */s/ Anthony I. Paronich*

Anthony I. Paronich, *Pro Hac Vice*
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

*Attorney for Plaintiff and the putative Class*